PICKETT, RECEIVER, v. FIDELITY AND CASUALTY CO.

1. SUPPLEMENTAL PLEADINGS—APPEAL—EMPLOYEE'S INSURANCE.—Motion papers for leave to file supplemental pleadings, must make *prima facie* showing of facts occurring since filing of first pleading, or of which party then had no knowledge, and order thereon will not be reviewed unless there be an abuse of discretion, or some error of law, or some substantial right lost or impaired; and here the alleged agreement by insured employer in settling with injured employee contrary to terms of policy, is not supported by the facts shown.

2. PRACTICE—RECEIVER—ISSUES.—RULE TO SHOW CAUSE is the proper proceeding to continue action in name of receiver appointed to succeed one deceased, and if defendant desires to contest questions of death of first receiver and appointment of second, he should have done so on return to rule, on motion to refer these issues.

3. CHARGE.—Stating to jury admitted or adjudicated facts is not charge on facts.

4. NONSUIT—INSURED EMPLOYER—RECEIVER.—Under pleadings and evidence, nonsuit on the ground that policy is not an asset of the insured insolvent employer in hands of receiver, properly refused.

5. AMENDMENT OF PLEADINGS during trial as to change substantially the defense, cannot be allowed.

6. PLEADINGS—INSURANCE—FORFEITURE.—Allegations in complaint that all conditions of policy have been performed by insured and denial by answer, does not enable insurer to prove conditions of forfeiture, but it must specifically allege all matters of forfeiture

7. MISTAKE.—Mere forgetfulness at time by party of fact previously known cannot be relieved against as a mistake of fact.

8. EMPLOYER'S INSURANCE—INSURANCE.—THIS POLICY construed to insure assured against liability from injury to employees, and hence insurer is liable to assured for judgment against it for injury to employee, although it has not paid the judgment, and is insolvent

and cannot be made to pay. *McDonald* v. *Bauskett,* 10 Rich., 178, *distinguished from this..*

9. MR. CHIEF JUSTICE McIVER and MR. JUSTICE POPE *dissent.*

10. REHEARING refused because Court is divided as to merits of petition.

Before GAGE, J., Charleston, December, 1899.  Affirmed.

Action on employer's insurance policy 'by M. P. Pickett, receiver of the Charleston Basket and Veneer Co. against Fidelity and Casualty Co. of New York.  From judgment for plaintiff, defendant appeals.

*Messrs. Fitzsimons & Moffett,* for appellant, cite: *Error to refuse to permit defendant to set up recently discovered facts by supplemental answer constituting good defense:* Code, 194; 10 S. C., 101; 3 Hill, 195; 2 Speer, 41; 16 S. C., 234; 32 S. C., 117; 53 S. C., 341; 18 S. C., 315; 1 Ency. P. & P., 518; 59 N. Y., 233; 8 How., 56; 3 St. Rep., 699. *Limitation that amendment shall not substantially change defense, does not apply to amendments before trial:* 30 S. C., 564; 13 S. C., 21, 397; 27 S. C., 1; 47 S. C., 190; 54 S. C., 490; 18 S. C., 318; 53 S. C., 451. *Defendant should have been permitted to put in issue the question of receivership:* 42 S. C., 388; 55 S. C., 274; 35 S. C., 391. *Error not to permit defendant to amend answer to conform to facts proved:* Code, 194; 51 S. C., 416; 55 S. C., 90; 1 Ency. P. & P., 485. *Policy is an indemnity contract, and there can be no recovery under it until the alleged judgment has been paid in whole or in part:* 6 Rich., 100; 1 Hill, 234; 2 N. & McC., 493; 3 Strob., 377; 10 Rich., 178; 11 S. C., 593; 15 S. C., 110; 44 S. C., 406; 40 S. C., 16; 2 Rich., 80; 14 S. C., 67; 6 Wall., 99; 52 F. R., 705; 1 N. Y., 561; 63 N. Y., 390; 16 Nev., 327; 4 Ency., 698; 49 Am. Dec., 362; 24 Am. Dec., 44; 6 Hill, 324; 122 Mass., 566; 13 Pick., 426; 19 Wend., 423; 110 Mass., 347; 15 Minn., 461; 65 N. W., 363; 41 Md., 571; 41 Am. Dec., 549.

*Messrs. Bryan & Bryan,* contra, cite: *Exceptions 1 and 2 are too indefinite:* 52 S. C., 83. *Information which if pur-*

*sued would lead to a fact, is notice thereof:* 52 S. C., 224.
*Order of Judge Benet providing for payment by defendant
and consented to by it, was binding:* 43 At. R., 503; *and re-
lief against it can only be had in that case:* 19 S. C., 527; 24
S. C., 404; 34 S. C., 452; 35 S. C., 612; 40 S. C., 161. *Al-
lowance of an amendment is discretionary with Circuit
Judge:* 41 S. C., 385; 22 S. C., 57; 38 S. C., 556; 41 S. C.,
145; 51 S. C., 164. *Rule to show cause is proper practice
for continuance of cause in name of succeeding receiver:*
Code, 142; 42 S. C., 388; 32 S. E. R., 301; 33 S. E. R., 9.
*No time to raise issue of appointment of receiver being asked
for, trial properly proceeded with:* 12 S. C., 174; 13 S. C.,
491; 16 S. C., 235. *Motion to amend pleading to conform
to facts proved cannot be entertained until facts are proved:*
55 S. C., 90; 50 S. C., 459. *General denial does not put in
issue forfeiture of policy, but such must be specially pleaded:*
28 S. C., 431; 20 S. E. R., 754. *Construction of record is
not charge on facts:* 53 S. C., 367, 533; 50 S. C., 218. *As
to mistake as a ground of defense:* Bail. Eq., 494; 46 S. C.,
228. *As to the construction of the policy:* 10 Ency., 402-3,
413, 415, 417; 68 Ill., 604; 8 Nev., 121; 1 N. Y., 550; 4
Abb. Pr., 8; 8 Cow., 623; 3 Den., 321; 19 Wend., 423; 8
Wend., 452; 9 Pa. St., 366; 8 Watts, 157; 5 Watts & S.,
440; 2 Bay, 145; 2 Rich., 80; 78 Wis., 17; 103 N. Y., 527;
22 Mass., 380; 40 S. C., 16; 10 Mees & Wells R., 295; 1
Hill, 145; 63 N. Y., 390; 41 S. W. R., 420; 65 N. W. R.,
353; 15 Minn., 461; 67 N. W. R., 47.

This opinion was filed March 12, 1891, but remittitur
stayed on March 21, 1901, until

April 20, 1901. The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES. This suit is upon what is known as
an employer's liability insurance policy, and the appeal herein
is from a judgment against the defendant insurer, for the
amount of the policy.

The first question presented is whether Judge Benet erred in his order of February 4, 1899, refusing defendant's motion before trial, for leave to serve an amended and supplemental answer. The proposed answer, among other things, alleged in avoidance of the policy a settlement between the Charleston Basket and Veneer Company, employer, and Charles H. Farley, employee, whereby $500 was paid to Farley in full for all claim against the insured company or its receiver for damages for injury, or for any judgment which might be rendered against said company in the suit for said damages; that said settlement was agreed to prior to the verdict in the damage suit by Farley against the Charleston Basket and Veneer Co., without the knowledge or consent of the defendant, and that defendant was ignorant of said settlement at the time of filing the original answer herein, having first heard of the same on December 14, 1898. In support of his motion, the defendant submitted affidavits to the above effect. It is contended under the first and second exceptions that the motion should not have been refused, "because the uncontradicted affidavits in support of the motion showed that facts constituting a complete defense to this action had just come to the knowledge of the defendant, and that said facts were unknown to defendant, and defendant did not have the means of knowing such facts; that the fact was that a secret settlement of the judgment sued on had been made, and no liability upon said judgment existed." These exceptions cannot be sustained. In the first place, the exceptions point out that the settlement was of the *judgment,* meaning the judgment in the case of Farley, the injured employee, against the Charleston Basket and Veneer Co., the insured employer. Sec. 4 of the policy provides, "the assured shall not, except at his own expense, settle any claim, nor incur any expense, nor interfere in any negotiations for settlement with the injured person, nor in any legal proceedings, without the consent of the company previously given in writing, &c." This provision does not relate to a settlement of a final judgment establishing the

employer's liability to the injured employee, but relates to such a settlement of the claim for damages before judgment as would effect the right of the insured to a fair and full judicial investigation of the claim for damages, and was designed to prevent collusion between the insured employer and the injured employee, to the prejudice of the insurer. Under this provision, for illustration, the insured employer and the injured employee may not agree upon an amount as the damages sustained, and seek to bind the insurer without his consent, since the insurer, by the policy, has the right to conduct and defend the suit for damages; but we see no reason why the employer and injured employee, pending a suit for damages, may not agree that in the event of a recovery after investigation exceeding the amount of the policy, such judgment shall be cancelled by the proceeds of the policy, or the excess in the judgment over the amount of the policy shall be remitted or settled for a specified sum. If such an agreement could be in any sense a settlement before final judgment, it would not be a settlement of any claim at the expense of the insurer, since the insurer is not concerned with so much of the claim as may upon final judgment exceed the amount of the policy. The suit by Farley against the Charleston Basket and Veneer Co. for damages was for $10,000, was vigorously defended by the defendant insurance company, and resulted in a final judgment in favor of Farley for $3,510.50. The amount of the insurance policy is $1,500. On March 24, 1896, before the trial, the attorneys for the Charleston Basket and Veneer Co. wrote to the attorneys of the defendant company the following letter: "Gentlemen: We have previously had occasion to express to you our opinion that this case should be compromised, if it can be done at a reasonable figure, and since the company has had to pass into the hands of the receiver, our first opinion on this subject is simply confirmed. As you are aware, with your approval and subject, of course, to the consent of your clients, so far as their interest is concerned, I have negotiated looking to a settlement, and I have concluded arrange-

31—60

ments whereby the plaintiff will accept in full settlement of his claim the sum of $1,500, provided the same is settled at once. Your company is, of course, liable primarily up to $1,500, but recognizing that you would not naturally be willing to compromise for the full amount of your liability, we are willing to contribute towards this settlement one-third thereof, namely, $500; and we, therefore, trust that you will conform to this settlement, and agree to the compromise of $1,000. If you do not see fit to do this, why, then, so far as our client is concerned, we shall consider ourselves at liberty to make any arrangements looking to a settlement of our liability over and above yours as we may deem best to our interest. We have always said that if there was any liability at all, the amount of damages would be far in excess of the amount of policy, and for this reason we have always been anxious to settle this matter and have it out of our way." To this letter the defendant, through their attorneys, promptly replied, declining to make the settlement. By said letter the defendant company, as early as March, 1896, was informed of the intention of the Charleston Basket and Veneer Co. to make arrangements to protect itself against so much of the claim or judgment to be rendered thereon as exceeded the amount of the policy. It further appeared before the Judge hearing the motion by the complaint and answer, that on the 18th January, 1898, the following order was passed, with the written consent of the defendant indorsed thereon, in the case of Charles H. Farley *v.* Charleston Basket and Veneer Co., and in the case of A. W. Robb *v.* Charleston Basket and Veneer Co. : "It appearing to the satisfaction of the Court that in the first entitled cause the judgment recovered in the Court below has been affirmed by the Supreme Court, and that the policy No. 48390, issued by the Fidelity and Casualty Co. of New York to the *Charleston Basket and Veneer Co.,* on the 19th day of April, 1895, provides for the payment of *fifteen hundred dollars* in case of an accident to any of its employees; and that Charles H. Farley, the plaintiff in the first entitled action, was, during the

existence of such policy, injured in the employ of the said *Charleston Basket and Veneer Co.,* and is entitled to whatever amount may be paid under the policy aforesaid; and whereas, the amount due and payable under said policy is the sum of *fifteen hundred dollars,* and M. P. Pickett heretofore has been appointed receiver of the Charleston Basket and Veneer Co. in the last entitled cause, and has not yet been discharged; and it further appearing that the said Fidelity and Casualty Co. is prepared to pay the sum of $1,500 upon being fully and completely discharged from all liability in the premises. Now, therefore, on motion of T. Moultrie Mordecai, Esq., attorney for M. P. Pickett, receiver, it is ordered, that upon the said Fidelity and Casualty Co. of New York paying over unto M. P. Pickett, receiver, the sum of *fifteen hundred dollars,* there be delivered up to the said company the said policy of insurance No. 48390, receipted in full by the said M. P. Pickett, receiver; and that said receiver, upon the receipt of the said $1,500, do pay over the same to the said Charles H. Farley, or his attorney; and upon the Fidelity and Casualty Co. paying over the said sum of money to the said receiver, it be discharged from all further liability by reason of its having issued said policy, and that upon the said receiver turning over the said $1,500 to the said Charles H. Farley, or his attorney, he be discharged as receiver of the said Charleston Basket and Veneer Co., and an *exoneratur* entered upon his bond. W. C. Benet, Judge First Circuit." This order, to say the least of it, is wholly inconsistent with the affidavit submitted by defendant of a settlement between the Charleston Basket and Veneer Co. and Farley for $500 before judgment, in violation of the policy. The *prima facie* showing is the contrary of that claimed by the appellant. The refusal of a motion to file a supplemental answer is ordinarily within the discretion of the Circuit Court, and will not be reversed by this Court except for abuse of discretion, or unless the Court's action was controlled by some error of law, or unless some substantial right is thereby lost or impaired. The motion papers for

leave to file a supplemental pleading, under sec. 198 of the Code, must, at least, make a *prima facie* showing of facts *material* to the case or defense which have occurred after the former pleading, or of which the party was ignorant when the former pleading was made. In view of the foregoing, we see no ground for reversing said order refusing leave to file the supplemental answer.

2. The next matter to be considered is whether Judge Gage committed error by his order of December 2, 1899, substituting D. B. Gilliland, receiver, as plaintiff, in the place of M. P. Pickett, former receiver now deceased, and continuing the action in the name of said Gilliland, receiver. This order was based upon a rule to show cause, and the return of the defendant thereto. The point made in the return was that "the only way in which the cause can be continued is by supplemental complaint duly served." There was no error in the order. The rule to show cause was a proper procedure to continue the action in the name of the successor of the former receiver. Sec. 142, Code. *Durham* v. *Carson,* 42 S. C., 388; *DeLoach* v. *Sarratt,* 55 S. C., 254. If defendant wished to contest the fact of the death of the former receiver and the fact of the appointment of Gilliland as successor, the issue should have been raised in the return to the rule. The third exception must, therefore, be overruled; so, also, must the fourth be overruled, which complains of error in forcing the case to trial without permitting defendant to put in issue the question of the receivership of Gilliland; and likewise must be overruled appellant's ninth exception, which complains that the Judge charged the jury on the facts in saying to them, "Now, D. B. Gilliland brings action as the successor of Pickett. Pickett was the first receiver of the basket company; he died, and now D. B. Gilliland stands in the place of Pickett and the place of the basket company." The facts stated to the jury were not in issue, but were admitted or adjudicated facts, and so the charge was not in respect to facts, as prohibited by the Constitution.

3. There was no error in overruling the motion for non-suit, as complained in the fifth exception. The contention is that there was a total failure of evidence to show that the policy sued is an asset of the Basket and Veneer Co. This is without foundation, as the complaint alleges and the answer admits the execution and delivering of the said policy to the Charleston Basket and Veneer Co., and according to the testimony of D. B. Gilliland, the policy was in his possession as receiver, and was the only asset of the company in his possession.

4. The·sixth and eighth exceptions assign error in refusing defendant's motion to conform the pleadings to the facts proved, the contention being that it appeared in the testimony of Mr. Mordecai that an agreement had been consummated by which the damage suit had been compromised, which agreement and compromise constituted a complete defense to the policy sued on. In the first place, as stated by the trial Judge, such facts did not appear in the testimony. In the next place, to have allowed an amendment during trial setting up such breach of the policy, would have substantially changed the defense, which is not authorized by sec. 194 of the Code. *Whaley* v. *Stevens,* 21 S. C., 221.

5. The seventh exception, imputing error in striking out all testimony going to show a breach of the policy, upon the grounds that such testimony was out of the pleadings, whereas, it is alleged in the complaint that all the conditions of the policy had been duly performed, which allegation was denied by defendant's answer. Such a denial does not require a plaintiff in a suit on an insurance policy to prove compliance with the conditions in reference to forfeitures as a part of the plaintiff's case. It is incumbent on the insurer when sued to specifically allege any matter of forfeiture relied on. *Copeland* v. *Western Assurance Co.,* 43 S. C., 26. In the absence of any allegation in the answer alleging a breach of a condition of forfeiture,

it was not error to strike out testimony, if any, tending to show such forfeiture.

6. The twelfth and thirteenth exceptions relate to the consent order copied above, and may be considered together. They are as follows: "XII. His Honor erred in charging on the consent order ,as follows: 'There is no contention in the pleadings here by the insurance company that it was without consideration.' We submit that it was alleged in the answer and proved by uncontradicted testimony that the 'consent order was signed by a mistake, which mistake disclosed a total failure of consideration because of insolvency and consequent non-liability.' XIII. His Honor erred in charging upon the consent order: 'If a party had knowledge of facts when he made a contract, but for the moment when he made it had forgotten the fact, overlooked it, that is not such a mistake as the law will relieve him against * * * therefore, if these parties ever knew a defense which they set up in their answer, to wit: the insolvency of this basket and veneer company, but temporarily forgot it and made the contract, they are, notwithstanding, bound by it.' " In his charge to the jury the Judge overruled plaintiff's contention that said consent order was a final judgment, and could not be set aside except by a motion in that cause, but instructed the jury that said consent order was a contract between the parties. Then he used the language excepted to in the twelfth exception. There was no error in this, as there was, in fact, no contention in the pleadings that said consent order was without consideration. The answer admitted the making of the consent order, but alleged "that said order was consented to through a mistake on its part, this defendant having overlooked the fact of the insolvency of said Charleston Basket and Veneer Co., and the non-payment of said judgment and the non-liability of this defendant under its said policy by reason thereof." In reference to this defense, the Judge charged as complained in the thirteenth exception. We see no error in this. As held in *Coates & Sons* v. *Early,* 46 S. C., 220, in order to relieve a

party of the consequences of an honest mistake, it must be shown that the other party to the contract in some way caused the mistake, and that the party making the mistake could not by due diligence have avoided it. Under this principle, momentary forgetfulness of a known fact by one party is not relievable as mistake. Besides, in this case the order itself was sufficient to put defendant upon notice of the insolvency of the Charleston Basket and Veneer Co., for it was entitled in the creditor's suit of A. W. Robb *v.* Charleston Basket and Veneer Co., and provided for payment to the *receiver* of said Charleston Basket and Veneer Co. But still further, no harm could possibly have resulted to the defendant by the charge, since, as will more fully appear hereafter, the insolvency of the Charleston Basket and Veneer Co. is no defense to this action.

7th. The remaining exceptions raise the question whether the liability of defendant under the policy arises upon final judgment in favor of the injured employee in the suit for damages, or only upon payment in whole or in part of said judgment. The Court charged the jury that "it makes no difference whether or not the basket company ever paid out a dollar at all on this loss; if one of their men was injured and their liability to pay that debt was fixed by final judgment, then the plaintiff is entitled to recover." The question raised involves the construction of the policy. The policy is called an "Employer's liability policy." By its terms the Fidelity and Casualty Co., "agree to indemnify the Charleston Basket and Veneer Co. * * * against liability for damages on account of fatal or non-fatal injuries accidently suffered by any employee or employees of the assured while engaged at the places and in the occupation mentioned * * * subject to the following agreements and conditions." Among these conditions we note the following: "1. The company's liability for an accident resulting in injuries to or the death of one person is limited to fifteen hundred dollars ($1,500), and subject to the same limit for each person; its gross liability for a casualty result-

ing in the injury to or death of several persons is *ten thousand dollars* ($10,000) * * * 3. If thereafter any legal proceedings are taken against the assured to enforce a claim for damages on account of such accident, the company will defend the same, at its own cost, in the name and on behalf of the assured.   4. The assured shall not, except at his own cost, settle any claim, nor incur any expense, nor interfere in any negotiations for settlement with the injured person, nor in any legal proceedings, without the consent of the company, previously given in writing; but he may provide such immediate surgical relief as may be imperative.   The assured shall render to the company all reasonable aid in securing information and evidence, and in effecting settlements. * * * 12. No action shall lie against the company after the expiration of the period within which an action for damages on account of the given injury or death might be brought by such claimant or his representative against the assured, unless at the expiration of said period there is a suit arising out of such accident pending against the assured, in which case an action may be brought in respect to the claim involved in such action against the company by the assured within thirty days after final judgment is rendered in such suit, and not later. * * * 14. This policy and the application for it, copy of which application is indorsed hereupon, taken together, with all their respective declarations, stipulations, parts and conditions, constitute a contract of insurance between the company and the assured; and if the suit is brought on this contract, it must be constructed accordingly, whether such suit is brought on the original contract or on any renewal thereof."

We do not construe this contract of insurance as a mere contract of indemnity *against loss or damage,* but as a contract to protect *against liability.*   In 16 Am. & E. Ency. Law, 2d ed., 178, the correct rule is thus stated: "Where the contract is strictly one of indemnity, the indemnitee cannot recover until he has suffered actual loss or damage; the mere incurring of liability gives him no such right; but where the

contract is to protect against liability, the indemnitee may recover upon it as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time when he seeks to recover." In the case of *Ramsay* v. *Gervais,* 2 Bay, 145, which was a motion to set aside a judgment rendered in a suit on a bond of indemnity to save an indorser harmless from and against all the consequences and damages which might arise from the indorsement, it was held that, after protest, the obligee of the indemnity bond was not compelled to pay the indorsed note before suing on the indemnity bond. In the case of *Bellune* v. *Wallace,* 2 Rich., 80, which was a suit upon an obligation, conditioned to indemnify a surety against the principal's default on a guardianship bond, it was held that the indemnitée might sue for breach of condition before he has actually sustained any loss. And in the case of *Beasley* v. *Newell,* 40 S. C., 22, Mr. Chief Justice McIver, as the organ of the Court, said: "Ever since the case of *Thankersley* v. *Anderson,* 4 DeSaus., 44, it has been regarded as the settled law of this State, that a surety who holds a mortgage or other collateral security given him to indemnify him against loss by reason of his suretyship, may proceed to enforce such mortgage or other security, as soon as he becomes endangered and before actual payment of the debt for which he has become surety." This well settled rule in regard to the kinds of indemnity obligations before the Court in the cases cited, may well be applied to the insurance contract before us, where the indemnity is expressly *against liability* and not merely against loss by reason of liability.

The case of *McDonald* v. *Bauskett,* 10 Rich., 178, cited by appellant, does not conflict with the foregoing. The bond to the surety in that case was "to exonerate, discharge, and indemnify him from and against any and all liability to pay the mortgage, or any part thereof, or any cost or expense thereon. And we hereby covenant and agree to take the place and stand in the shoes of the said M., and obligate ourselves jointly and severally to him to *repay and refund to*

*him whatever amount he may have to pay on said bond and
mortgage.* And for the faithful performance of this cove-
nant and obligation we hereby jointly and severally bind
ourselves, &c." The Court, while recognizing that the first
covenant contained in the obligation, when taken separately,
seemed to bind the defendants to indemnify against liability
to pay the mortgage, held that the instrument, when taken as
a whole, may be fairly construed to be an obligation to in-
demnify the obligee against all damages which may come to
him from the surety obligations. The second part of the
obligation, which we have italicized, might well be construed
as explaining or modifying the meaning of the first part,
which, unrestricted, would mean indemnity against liability
and not indemnity against loss by reason of liability. The
other cases cited by appellant from our own reports need not
be noticed in detail, as it will be sufficient to say that they do
not conflict with the principles stated in the other cases cited
in this opinion. The contract in question is not at all am-
biguous. It is expressly indemnity against liability. This
liability attaches when the amount of the employee's damage
is agreed upon by the parties, with the insurer's consent, or
when there is a final judgment fixing the liability of the in-
sured employer to the injured employee. In this case there
was a final judgment for the insured employee for more than
the amount of the insurance, and the suit was defended by
the company, as provided for in the policy. One of the
objects of the provision authorizing defense of any suit for
damages to be made by the insurer, and taking from the
insured all right of interference, was to enable the insurer,
if possible, to prevent any liability against the insured em-
ployer, and this liability which by the policy the insurer was
to contest was the liability against which the policy was
issued. If the insurer meant to stipulate that payment of
the judgment rendered in the suit for damages was a condi-
tion precedent to recovery on the policy, it was easy to say
so. On the contrary, the insured is forbidden to settle the
claim for damages or interfere in the legal proceedings to

ascertain the liability, and is barred of his action if suit is not brought "in respect to the claim involved," in the damage suit within thirty days after final judgment in such suit.

In other jurisdictions this policy, or one substantially like it, has been considered and construed in accordance with the foregoing view. *Fidelity and Casualty Co.* v. *Fordyce,* 41 ·S. W. Reporter, 42; *Anoka Lumber Co.* v. *Fidelity and Casualty Co.,* 65 N. W., 355; reported, also, in 30 L. R. A., 689; *Haven* v. *Employers' Liability Assurance Corporation,* 67 N. W. Rep., 47; 32 L. R. A., 388; *Fenton* v. *Casualty Co.,* 48 L. R. A., 770; II. Ency. Law, 2 ed., 9, 17.

The judgment of the Circuit Court, by reason of an equal division of this Court, stands affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting.* I cannot concur in the conclusion reached by Mr. Justice Jones in this case; but as I cannot now spare the time from other and more pressing official duties to state the reasons why I am unable to concur, I must content myself at present with a simple dissent, reserving to myself, however, the right to set forth fully my reasons at some future time.

MR. JUSTICE POPE, *dissenting.* The only question upon which I desire to express an opinion is as to the alleged error of the Circuit Judge in denying the motion of defendant by its proposed supplemental answer, in setting out by proper allegations the fact that since the original answer of the defendant had been filed, it was discovered that the Charleston Basket and Veneer Co. had settled all the claims of C. H. Farley against said Charleston Basket and Veneer Co. on the judgment of the said Farley against the Charleston Basket and Veneer Co., for the sum of $500. In my judgment, the receiver of the Basket and Veneer Co. should only recover under the contract of the Fidelity and Casuality Co. to indemnify said Charleston Basket and Veneer Co. from liability for injuries to its employees—of whom the said Farley was one—the amount of injury suffered by it; and it is alleged that only $500 was such injury to Farley (which had

been actually paid). To hold otherwise, it seems to me, would be against a *sound public policy,* for it would legalize the effort of the Charleston Basket and Veneer Co. to collect from the defendant as an indemnifier against loss three times the amount it actually paid as such loss. Inasmuch as the defendant, by its motion to be allowed to file a supplemental and amended answer, was seeking to bring this matter to the · attention of the Court, it was error in the Circuit Judge to refuse this motion. Of course, if the Circuit Judge erred in this matter, all that was done afterwards was erroneous.

I think, therefore, the judgment below should be reversed and the cause be remanded to the Circuit Court, with directions to allow the proposed change in the answer.

Petition for rehearing was filed 21st March, 1901, and thereon the following order was filed April 20, 1901:

PER CURIAM. The Court being equally divided, after a careful consideration, it follows necessarily that the petition fails. It is therefore, ordered, that this petition be dismissed and the stay of *remittitur* heretofore granted be revoked.